UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA

| | |
|---|---|
| **MARGARET B. McCOLLUM** | Case No.:  6:10-CV-01514-ACC-GJK<br>Judge:<br>Magistrate: |
| Plaintiff, | **AMENDED COMPRAINT AND DEMAND FOR TRIAL BY JURY** |
| v. | |
| **ORANGE COUNTY, FLORIDA,** | |
| Defendants. | |

## NATURE OF ACTION

Plaintiff, **MARGARET B. McCOLLUM**  ("Ms. McCollum" or "Plaintiff), by and through her undersigned attorney, **sue** Defendant  **ORANGE COUNTY, FLORIDA**  ("Defendants" or "Corrections") for damages in excess of $ 50, 000 for violations of her civil rights occurring during her  employment relationship with Defendant.  The Plaintiff sues Defendant under Title I of the Americans with Disabilities Act ("ADA") of 1990, 42 U.S.C. Section 12101 *et seq,* and the Florida Civil Rights Act of 1992, Section 760.01 *et seq*., Florida Statutes ("FCRA"); Title VII of the Civil Rights Act of 1964 and

1991, as amended, 42 U.S.C. Section 2000e *et seq.* ("Title VII"), the Civil Rights Act of 1871, as amended, 42 U.S.C. Section 1981 ("Section 1981"),   for violations of the Plaintiffs equal rights, and Retaliation for filing of EEOC.  Plaintiff  seek damages and their costs, including a reasonable attorney's fees and litigation expenses.

Ms. McCollum  alleges that Defendant discriminated against her by denying her a reasonable accommodation in violation of the ADA and FCRA and that Defendant wrongfully

1

terminated the Plaintiff. Ms. McCollum alleges that Defendant retaliated against Plaintiff filing of the current EEOC complaint and Defendant took steps to retaliate against her as outlined in the factual allegations set forth below. This was in violation of ADA , FCRA and Title VII.

## JURISDICTION AND VENUE

1.   This Court's jurisdiction is invoked pursuant to 28 U.S.C. Sections 451, 1331, 1337 and 1343. This action arises under 42 U.S.C. Sections 12101 *et seq.*

2.   This Court has supplemental jurisdiction over Plaintiffs state law claims pursuant to 28 U.S.C. Section 1367.

3.   Ms. McCollum has exhausted her administrative remedies. On or about October 28, 2008, Ms. McCollum filed a charge of discrimination with the United States Equal Employment and on or about September 5, 2009,    Thereafter, by letter dated July 7, 2010, the EEOC issued M McCollum a Notice of Right to Sue, a copy of which is attached hereto as Exhibit "1". Ms. McCollum initiated this action within ninety (90) days of receipt of the EEOC's Notice of Right to Sue. All conditions precedent to institution of this action by Ms. McCollum has been fulfilled.

4.   Pursuant to 28 U.S.C. Section 1391, venue of this action is proper in the Middle District of Florida because all of the alleged unlawful acts complained of herein occurred in Orlando, Florida.

## PARTIES

5.   At all times material hereto, Defendant continuously has been doing

business in the State of Florida and the City of Orlando, and continuously has had at least 15 employees. At all times material hereto, Defendant continuously has been an employer engaged in an industry effecting commerce within the meaning of ADA, FCRA, and TITLE VII.

6. Plaintiff Ms. McCollum is a natural person who is a black female, and now is residing in Boca Raton, Florida. At all times material hereto, Ms. McCollum was employed by Defendant.            .

## FACTUAL ALLEGATIONS

7. Ms. McCollum's last position with Defendant was as a Administrative Assistant. Plaintiff worked for the Defendant from March 27, 1989 until her wrongful termination on February 27, 2009. That as a result of the conditions of the workplace Ms. McCollum suffers from severe allergies, asthma. In addition, Ms. McCollum suffers from the following, including but not limited to, sinus problems, headaches, upper respiratory infections, eye irritation, shortness of breath, allergies, dizziness, sneezing, fatigue, runny nose, skin irritations, dry throat and coughing.

8. That the area in which Ms. McCollum worked subjected her to the following conditions, including but not limited to, poor ventilation system, no windows to ventilate the area
in which she worked, heavy dust, scented candles burnt by co-employees and supervisors, and other poor conditions SUCH AS exposed to employees smoking, paint, (fumes and chemicals vapors) aerosol sprays, potpourri, employees perfumes, mold, dust, leaks – damp carpet from leaks – large fans to dry leaks – required to work in are when old carpet was bring removed and replaced replacement. That Ms. McCollum's condition of having asthma is within the meaning of ADA as being disabled.

3

9. That Ms. McCollum has made several requests for reasonable accommodation based upon her condition to supervisors and management, including but not limited to, When Plaintiff was told by my Major Richard Anderson that we were transferring from the administrative building to BRC (Booking Release Center) that no cart rides could be provided for Plaintiff. And, that in accordance with policy all staff must enter by way to the Security Perimeter and that the front door could not be used by Plaintiff. (Other Orange County employees were allowed to use the carts and come in through the front door entrance. (When Plaintiff transferred to BRC, which was quite a distance from the South Perimeter parking lot to the BRC entrance, the distance Plaintiff was required to walk was causing Plaintiff to experience more respiratory distress), Plaintiff requested a 4 day ten hour workweek schedule. On June 1, 2008, Plaintiff was required to report to work for the 5 days a week work schedule and Plaintiff requested to remain on my 4 day ten hour work week schedule until an ADA accommodation determination was made and this request was denied.

10. That the Defendant failed to accommodate her by transferring her as requested. Plaintiff requested a 4 day ten hour workweek schedule. Plaintiff request was denied and Plaintiff was told that regardless if Plaintiff qualified for ADA or not they were unable to accommodate Plaintiff request and that it was an unreasonable request. Plaintiff informed employer (in writing) that Plaintiff was willing to participate in an interactive process to assist in determining an effective reasonable accommodation for Plaintiff. However, there were no interactive discussions. When Plaintiff met with Major Richard Anderson and Mr. William Rivera, Plaintiff was provided a copy of the County Human Resources Process - Americans With Disabilities Act Accommodation Process and the process was explained to Plaintiff. Plaintiff was told to provide medical records To Human Resources and that an appointment with an regarding Plaintiff asthma. (No determination had been made by the County that Plaintiff qualify, Major Richard Anderson, denied Plaintiff

request stating "I have conferred with the Mr. William Rivera, Manager of Human Resource regarding your request for an ADA accommodation. At present, we are unable to determine if your medical condition qualifies as a "disability" under the ADA. And in accordance with policy Plaintiff filed a grievance and was going though the grievance process when Plaintiff fell on the job and was injured. Major Richard Anderson and Mr. William Rivera actions were deliberate and premeditated their actions were discriminating, retaliating and harassing. They were attempting to pressure Plaintiff not to pursue her rights in accordance to OCCD ADA policies and regulations.

On July 24, 2008 Plaintiff was challenged in a grievance hearing to obtain the right to grieve Major Richard Anderson and Mr. William Rivera's decision that they were unable to determine if Plaintiff quailed for ADA. Deputy Chief Riley stated in the grievance letter results dated August 4, 2008.:

Donna Lokyo, Medical Manager, allowed to

work part time and has a personal golf cart for her use. Major Richard Anderson (Plaintiff supervisor) had a personal golf cart assigned to him due to obesity, heart complications, and hip surgery. When Plaintiff was terminated, Plaintiff asked for accommodations for worker's compensation restrictions. They too were denied.

11.     That Ms. McCollum was wrongfully terminated by the Defendant. That Ms. McCollum provided the Defendant with adequate excuses from medical doctors for being out due to her condition. That the supervisors and management knew of Plaintiff condition, but terminated her wrongfully in violation of the ADA.

12.     As a result of this wrongful termination action by Defendant and violative conduct, the Plaintiff Ms. McCollum was not accommodated as required by the ADA due to her condition.

## COUNT I

5

## Ms. McCollum's CLAIM OF DISCRIMINATION
## IN VIOLATION OF THE AMERICANS WITH DISABILITIES ACT

13.     Plaintiff Ms. McCollum adopts and realleges paragraphs **1-12** above as if incorporated herein.

14.     Plaintiff Ms. McCollum in May 13, 2008, made reasonable request to be Accommodated for her severe asthma caused by the workplace. (Note: The worker's Compensation filed regarding this was denied by worker's compensation). In addition, Ms. McCollum suffers from the following, including but not limited to, sinus problems, headaches, upper respiratory infections, eye irritation, shortness of breath, allergies, dizziness, sneezing, fatigue, runny nose, skin irritations, dry throat and coughing. That the area in which Ms. McCollum worked subjected her to the following conditions, including but not limited to, poor ventilation system, no windows to ventilate the area in which she worked, heavy dust, and other poor conditions.

15.     That Ms. McCollum's condition of having asthma is within the meaning of ADA as being disabled.

16.     That the Defendant failed to accommodate her by transferring her as requested by Ms. McCollum to another department that would accommodate her disabled condition.

17.     That Ms. McCollum was wrongfully terminated by the Defendant. That Ms. McCollum provided the Defendant with adequate excuses from medical doctors for being out due to her condition. That the supervisors and management knew of her condition, but terminated her wrongfully in violation of the ADA.

18.     Defendant's failure to accommodate for Ms. McCollum's disability of asthmatic condition as required by ADA was intentional, and with malice or reckless indifference to the

6

federally protected rights of Ms. McCollum.

19. As a direct and proximate result of Defendant's unlawful employment practices and violation of ADA, Ms. McCollum was emotionally harmed, suffered, and will continue to suffer, a loss of wages and other employment benefits, a loss of earning capacity, damages to her professional reputation, a loss of dignity, a loss of the enjoyment of life, embarrassment, humiliation, and other forms of mental anguish and distress.

Wherefore, Plaintiff Ms. McCollum requests this Court issue an order against Defendant awarding the Plaintiff Ms. McCollum compensatory damages, lost back pay and benefits, reinstatement and/or front pay, attorney's fees and costs, together with such other relief as this Court deems just and proper.

## COUNT II
## Ms. McCollum CLAIM OF DISABILITY DISCRIMINATION
## IN VIOLATION OF THE FLORIDA CIVIL RIGHTS ACT

20. Plaintiff Ms. McCollum adopts and realleges paragraphs **1-12** above as if incorporated herein.

21. Plaintiff Ms. McCollum in May 13, 2008, made reasonable request to be accommodated for her severe asthma caused by the workplace. In addition, Ms. McCollum suffers from the following, including but not limited to, sinus problems, headaches, upper respiratory infections, eye irritation, shortness of breath, allergies, dizziness, sneezing, fatigue, runny nose, skin irritations, dry throat and coughing.

22. That the area in which Ms. McCollum worked subjected her to the following conditions, including but not limited to, poor ventilation system, no windows to ventilate the area in which she worked, heavy dust, and other poor conditions.

7

23.   That Ms. McCollum's condition of having asthma is within the meaning of ADA as being disabled.

24.   That the Defendant failed to accommodate her by transferring her as requested by Ms. McCollum to another department that would accommodate her disabled condition.

25.   That Ms. McCollum was wrongfully terminated by the Defendant. That Ms. McCollum provided the Defendant with adequate excuses from medical doctors for being out due to her condition. That the supervisors and management knew of her condition, but terminated her wrongfully in violation of the FCRA.

26.   Defendant's failure to accommodate for Ms. McCollum's disability of asthmatic condition as required by ADA AND FCRA was intentional, and with malice or reckless indifference to the protected rights of Ms. McCollum.

27.   As a direct and proximate result of Defendant's unlawful employment practices and violation of FCRA, Ms. McCollum was emotionally harmed, suffered, and will continue to suffer, a loss of wages and other employment benefits, a loss of earning capacity, damages to her professional reputation, a loss of dignity, a loss of the enjoyment of life, embarrassment, humiliation, and other forms of mental anguish and distress.

Wherefore, Plaintiff Ms. McCollum requests this Court issue an order against Defendant awarding the Plaintiff Ms. McCollum compensatory damages, lost back pay and benefits, reinstatement and/or front pay, attorney's fees and costs, together with such other relief as this Court deems just and proper

**Count III/Violation of TITLE VII**
(RETAILIATION)

28.     Plaintiff adopts and realleges paragraphs **1-12**above as if incorporated herein.

29     That beginning in February 3, 2009, Plaintiff received a Written Reprimand from Major Anderson alleging violation of the attendance/tardiness policies.
At one time they were willing to give Plaintiff a ride and then the rules changed as always Plaintiff was treated differently than others in similar circumstances.  Major Anderson previously had a personal golf cart assigned to him, due to medical reasons.   Donna Lokyo has a golf cart assigned to her and she works in the same building Plaintiff was assigned to.  Chief Tidwell has a golf cart assigned to him; Human Relations staff (Mr. Rivera's Office) has a golf cart assigned to them.   It was an established practice that employees as well as management staff (to include Major Richard Anderson) would ride on the golf carts often.    Golf cart rides have been made available for dignities and volunteers visiting OCCD.  Just recently on March 6, 2009 a memo prohibiting staff to ride inmates on golf carts was put out to the entire Corrections Department staff.  On February 27, 2009,   Plaintiff received a phone call from Major Anderson at approximately 10:30 a.m., and he requested that Plaintiff turn fax machine on as he would be sending Plaintiff the results of PDH.   On the day the Plaintiff PDH Results Letter was written and faxed to her February 27, 2009, Plaintiff was authorized to be off work by Dr. Winters a County-authorized medical provider and was not due to return back to work until March 2, 2009 with restrictions. The statement in the PDH Results letter "to date, you have failed to report for regular, unrestricted full duty, thus resulting in unauthorized absences."   This is not a true statement.  (Medical note)   Major Anderson intentionally over looked this information to justify his harsh decision to terminate Plaintiff.    However, he does acknowledge that he had knowledge of Plaintiff medical note from Dr. Winters as indicated by his statement in the PDH

9

Results letter: "On February 23, 2009, you forwarded to me a medical note from Dr. Tom Winters, which indicates a return-to-work restriction of "sitting position only." Further, in your telephone conversation with me of February 26, 2009, you inquired about the use of a golf cart from the parking lot to the Booking and Release Center. Both of these requests are unreasonable given the essential function of your job and the physical location of your worksite. Note also that the Department cannot reassign a Corrections Office from a Perimeter Post for the purpose of driving employees on golf carts. The limited availability of golf carts coupled with the potential for accidents while transporting staff prohibits the usage of the carts for this purpose. It was the decision of OCCD to terminate Plaintiff employment treating her differently than other employees who had similar circumstances. OCCD showed Plaintiff absolutely no consideration like she has personally observed them to extend to others. OCCD has always shown concern for their employees and family members however, Plaintiff was not afforded the same consideration. (Example – Classification Officer Amber Seich is a 5-year veteran of Orange County Corrections requesting time off work to take care of her husband). In the PDH Results Major Anderson stated: "Department extended to you your rights under the Family Medical Leave Act (FML). However, you have already exhausted your leave rights under this regulation." This is not a true statement. In accordance with policy Plaintiff did not receive notification via mail nor certified mail from OCCD notifying Plaintiff that she was placed on FML due to absence associated with Workers' Compensation.

30.     Plaintiff was approved FML for asthmas and had not used the 480 hours afforded under FML. OCCD terminated Plaintiff they did not medically separate her as mentioned in their response to EEOC concerning Plaintiff ADA complaint. They had intended to terminate Plaintiff prior to February 27, 2009 as documented in their response to Plaintiff in the PDH letter

10

"Based upon the above information, in accordance with the Orange County Policy Manual and Operational Guidelines, I am considering disciplinary action up to and including discharge." This was written on 2/11/09.  OCCD would not entertain the true facts that the medical note for January 8, 2009 was never received by Plaintiff.   Plaintiff received no medical documentation from Dr Schwartzberg to return to work on 1/29/09.  Other employees in similar circumstances as Plaintiff have been allowed to medically separate from employment and have not been adversely affected as Plaintiff have by OCCD's decision to terminate her.   OCCD management has a negative posture against Plaintiff and has treated Plaintiff differently than CO Theresa Austin (white female) who was injured on the job in April 2008 and has not returned to work. (If she has a PDH she will be given an opportunity to medically separate like all other employees have been afforded.)  I have not been treated the same as others employees on Worker's Compensation or with restrictions.  Plaintiff was terminated because OCCD management decided that Plaintiff restrictions were unreasonable.  Other employees have been afforded other opportunities within OCCD due to medical worker's compensation and personal medical reasons – Cpl. Walt Miller; Cpl. Allen Auld.   Plaintiff was not allowed to medically separate, nor afforded an opportunity to request ADA or other opportunities that have been extended to other employees in a similar position. There was no inactive communications with Plaintiff regarding other work areas or positions that Plaintiff might be able to work due to Plaintiff worker's compensation restrictions.  No alternatives were discussed with Plaintiff however, she is aware that the court staff, judges, attorneys and the public are allowed to come in through the front entrance of the Booking and Release Center (BRC) (where Plaintiff was assigned) and this would be closer to her which could have assisted her greatly.  With a handicap sticker and authorization from management Plaintiff could have parked in front of the BRC and used the

11

front entrance.  OCCD management staff made the determination that Plaintiff worker's compensation restrictions were unreasonable and terminated Plaintiff from employment.   How can this be an action of Misconduct on Plaintiff behalf?  Plaintiff was terminated for attendance and medical issues as noted in the PDH letter there is no mention of any policies relating to Misconduct   However, on the OCCD Staffing Report and the Employee Change Notice Plaintiff was terminated due to misconduct this is not a true representation of what happened.  However, it is a gross misrepresentation of Plaintiff work history and a continuous intentional offense by OCCD management to cause Plaintiff to suffer by this cruel and untrue depiction of her work ethics.  OCCD management is unconcerned about their untrue accusation and how it has affected Plaintiff career and future job security.  The charge for dismissal regarding attendance or medical issues has never been misconduct during Plaintiff career with OCCD.  Additionally, Plaintiff was released from job due to medical reasons.  OCCD is purposely set against Plaintiff and bent on attacking Plaintiff integrity and work ethics.  This is an action of retaliation and is slanderous, harassing, discriminating, discrediting, harassing and a deformation of Plaintiff character.   OCCD management has polluted Plaintiff ability to use OCCD as a work reference; they have tainted Plaintiff reputation amongst her peers and colleagues throughout Orange County Government.   Plaintiff has been professionally and personally affected by this adverse treatment by OCCD.  If the discipline was justified or with cause there were several other termination codes (Active Personnel Action and Reasons) that have been used for other employees that did not reflected so harshly on their record not being allowed to use OCCD as a reference after so many years. (Date of employment 3/27/89 employed 19 years and 11 months.  Management chose the must harmful code to defaming Plaintiff reputation.   Violation of Orange County Policy Manual by OCCD's Management Staff, (Major Richard L. Anderson, Deputy

Chief Cornita Riley, Mr. William Rivera, and Chief Michael Tidwell):  Orange County Policy Manual, 413, Page 99, Disciplinary Action Policy:  Orange County is committed to its work philosophies and expectations, which serve as guidelines for employee behavior and performance.   Plaintiff has not received the same treatment as other employees in similar circumstances.

31.    That Major Richard Anderson, Mr. William Rivera, Deputy Chief Cornita Riley, Chief Michael Tidwell has continued the retaliatory behavior upon Plaintiff from February 3, 2009  to the present.

32.     That the disparate treatment that Plaintiff was subjected to and no other employees at the Defendant's were not,  was supported by employees Candice Cameron Student Employee, Barry White, Sergeant, Phil Lolli, Sergeant, Velma Pinkard Human Resouces, Renee Shaw Correctional Release Specialist,  Renee  Bassa Sr,CCO, Sherry Johnson, Captain, Isbell Walker Administrative Assistant, Betty Stuckey, Administrative Assistant Kenneth Hatcher, Steven Appo, Fiscal Services, Mark Lacienski, Lieutenant, Correctional Officer, Mary Rivers, Correctional, Officer,  John Hamer, Correctional Officer, Joe Alvarez, Correctional Officer, ,John Costello, Detention Services Offer, LaBridget Owens, Correctional Officer,  Agnes Vega Bonilla, Correctional Officer, Cindy Hodge, Corporal, Dennis Warren, Captain .Thomas Hungerford, Captain, Bennie Watson, Sergeant, Margo Denardo, Lona Fleming, Corporal, Debra  Harvey, Sergeant, Deanna Adams, Lieutenant, Octavia Murray, Corporal, Ingrid Smith, Corporal, Sherri Harpe, Correctional Officer.

33.     Plaintiff was retaliated against by the Defendant and subjected to disparate treatment by the Defendant because of  her his filing of the EEOC complaint

13

dated October 28, 2008. Plaintiff is a protective activity in which Plaintiff was a covered individual under statutes .

34. There is a causal link between Plaintiff EEOC filing of Charge for Discrimination and the retaliatory disparate treatment by the Defendant because of her filing of the EEOC Charge. That the retaliatory disparate treatment by the Defendant began less than Four (4 months after the filing of the Charge of  with the EEOC.

35. The aforementioned adverse employment action by Defendant was intentional.

36. The aforementioned adverse employment action by Defendant was done with malice or reckless indifference to the federally protected rights of Plaintiff.

37. As a result of this direct and proximate result of Defendant's unlawful employment practices and retaliation by Defendant, the Plaintiff has suffered damages to her professional reputation, a loss of dignity, a loss of the enjoyment of life, embarrassment, humiliation, and other forms of mental anguish and distress,  and loss of earning capacity,

Wherefore, Plaintiff requests this Court issue an order against Defendant awarding the Plaintiff compensatory damages, and attorney's fees and costs, together with such other relief as this Court deems just and proper.

Dated December 27, 2010

**Plaintiff  demands trial by jury on all issues so triable.**

Respectfully submitted,

ROMANO LAW CENTER, P.A.
Attorney for Plaintiff
11555 Heron Bay Blvd.
Suite 200
Coral Springs, Florida 33076
(954) 603-0130 tel.

By: <u>S/JAY ROMANO</u>
Jay F. Romano
Florida Bar No.: 0934097